UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| JOHANN A. BASS,<br><br>Plaintiff,<br><br>vs.<br><br>SHELBY HATTUM, TROOPER AT SOUTH DAKOTA DEPT. OF PUBLIC SAFETY IN INDIVIDUAL CAPACITY; JOHN DOE, TROOPER AT SOUTH DAKOTA DEPARTMENT OF PUBLIC SAFETY IN INDIVIDUAL CAPACITY; JANE SCHRANK, DIRECTOR, DRIVER LICENSE PROGRAM AT SOUTH DAKOTA DEPT. OF PUBLIC SAFETY IN HER INDIVIDUAL AND OFFICIAL CAPACITIES; AMANDA HOSSLE, DIRECTOR AT SOUTH DAKOTA DEPT. OF PUBLIC SAFETY IN HER INDIVIDUAL AND OFFICIAL CAPACITIES; JENNA HOWELL, DIRECTOR OF LEGAL AND REGULATORY SERVICES, SD DEPT. OF PUBLIC SAFETY, IN INDIVIDUAL AND OFFICIAL CAPACITIES; AND RHYENN ABSHER, SENIOR SECRETARY AT THE DRIVER LICENSE PROGRAM AT THE SD DEPT. OF PUBLIC SAFETY, IN INDIVIDUAL AND OFFICIAL CAPACITIES;<br><br>Defendants. | 3:23-CV-03014-RAL<br><br><br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Johann A. Bass filed a pro se lawsuit under 42 U.S.C. § 1983 following his arrest and conviction for Unauthorized Ingestion of a Controlled Substance in South Dakota state court and the subsequent suspension of his Commercial Driver's License by the South Dakota

1

Department of Public Safety. Doc. 122 (Second Amended Complaint). Bass has alleged both a violation of his procedural due process rights against Defendants Rhyenn Absher, Shelby Hattum, Amanda Hossle, Jenna Howell, and Jane Schrank (Count I), and a violation of his Fourth Amendment right to be free from an unreasonable search as incorporated by the Fourteenth Amendment against Defendant Troopers Hattum and John Doe (Count II). Doc. 122. Defendants Absher, Hattum, Hossle, Howell, and Schrank now move for summary judgment on Count I and argue that Bass's procedural due process rights were not violated, or in the alternative, that the Defendants, as government officials, are entitled to qualified immunity on Count I. Doc. 130. Bass also moves for summary judgment, also only on Count I. Doc. 136.

In short, the facts in the light most favorable to the non-moving party, Bass, reveal that Bass requested a hearing to determine whether his CDL could be suspended based on the nature of his felony conviction for Ingestion, mistakenly failed to call in on time for his hearing, and then requested that the hearing be rescheduled and the decision reopened. This request was denied and Bass's CDL was suspended. This Court grants the Defendants' Motion for Summary Judgment on Count I on qualified immunity grounds because Defendants did not violate a clearly established right due to Bass's apparent waiver of his procedural due process claim by failing to timely call in for his hearing.

### I.    Undisputed Material Facts Concerning Count I

On May 6, 2021, South Dakota Highway Patrol Trooper Hattum pulled Bass over in his semi-truck, "which had failed to keep [its] lane for approximately five seconds prior to being pulled over." Doc. 131 ¶¶ 2–3; Doc. 141 at 2. Bass was arrested on Driving Under the Influence (Drug) and Ingestion charges. Doc. 131 ¶¶ 5–6; Doc. 141 at 2; Doc. 137-1 at 2. On August 17, 2021,

Bass pleaded guilty to one count of Ingestion of a Controlled Substance, a felony, in violation of SDCL § 22-42-5.1.  Doc. 131 ¶¶ 5–6; Doc. 141 at 2; Doc. 137-1 at 4–5.

On August 26, 2021, the South Dakota "Department of Public Safety [DPS] sent Bass a Notification of Withdrawal of Driving Privileges, citing a felony committed while operating a motor vehicle in violation of FMCSR 383.5, 383.51, 384.226, 384.231(b) and SDCL [§§] 32-12A-36(1-5), 32-12A-64, 32-12A-1(7) and 32-12A-37."  Doc. 131 ¶ 7; Doc. 141 at 3 (disputing only the existence of a violation of any listed Federal regulation or South Dakota statute); Doc. 137-1 at 18–19.  On the Notice, DPS listed his felony conviction for Ingestion and informed him of his right to challenge the decision by requesting a hearing.  Doc. 134-1; Doc. 137-1 at 19.  On the same day, DPS sent a notice of intent to withdraw Bass's CDL and report of conviction through the federal Commercial Driver's License Information System (CDLIS), as required by 49 C.F.R §§ 383.31(a) and 384.208.  Doc. 131 ¶ 8; Doc. 141 at 3; 49 C.F.R §§ 383.31(a), 384.208.

Following the Notice, on August 31, 2021, Bass requested a hearing to determine whether his felony conviction qualified under SDCL § 32-12A-36(4), which requires the disqualification or withdrawal of CDL privileges whenever a vehicle is used in the commission of a felony.[1]  Doc. 131 ¶ 10; Doc. 141 at 4; Doc. 134-2 at 2–3.  On September 17, 2021, DPS sent Bass a Notice of Hearing informing him that an administrative hearing on the disqualification of his South Dakota

---

[1] Defendants submit that this withdrawal was negated following Bass's request for a hearing, but Bass disputes that DPS negated the withdrawal of his CDL.  Doc. 131 ¶ 8; Doc. 141 at 3. Defendants attach printouts from CDLIS in support of their assertion that the withdrawal was negated.  See Doc. 132-1.  This August 31, 2021 printout reads both "Withdrawal not negated," and "WITHDRAWAL NOT FOUND."  Id.  The facts viewed in the light most favorable to Bass requires the inference that withdrawal of Bass's CDL was not negated as a result of his hearing request.

CDL was scheduled for November 2, 2021, at 10:00 a.m. CST/9:00 a.m. MST[2] and providing a call in number as he was out-of-state. Doc. 131 ¶ 11; Doc. 141 at 4–5; Doc. 134-3. The Notice included the following information:

> If you do not exercise your rights at the hearing, they will be forfeited. If you or your representative fail to appear at the time and place set for the hearing, the decision will be based solely on testimony and evidence provided, if any, during the hearing or a final decision may be issued by default pursuant to SDCL 1-26-20[3] or the matter may be dismissed pursuant to ARSD 61:18:01:03[4]. The Hearing Examiner, after examining the evidence and hearing testimony presented by both parties at the hearing, shall make a proposed decision to the Director of Driver Licensing. The Program Director may accept, reject, or modify the proposed decision based on the hearing record. The final decision in this matter will be made by the Director of Driver Licensing. The final decision may be appealed to circuit court and the South Dakota Supreme Court as provided by law.

Doc. 134-3 at 1–2. On September 21, 2021, DPS provided Bass with additional information about the hearing, including the name of the assigned Hearing Examiner, Ryan Darling. Doc. 131 ¶ 12; Doc. 141 at 5.

It is undisputed that on November 2, 2021, the hearing took place, and Bass was not present. Doc. 131 ¶ 13; Doc. 141 at 5. South Dakota Assistant Attorney General Edward Hruska III, representing DPS, attended the hearing in person along with Hearing Examiner Darling, but Bass did not attend. Doc. 134 ¶¶ 2, 4, 6. Hruska attested that they waited approximately fifteen minutes for Bass before the hearing ended. Id. ¶ 8. Administrative Assistant Julie McClelland prepared a memo in the ordinary course of her duties, which was submitted with Hruska's affidavit,

---

[2] Part of South Dakota is in the Central Time Zone and part of South Dakota is in the Mountain Time Zone.
[3] Under SDCL § 1-26-20, "Unless precluded by law, informal disposition may be made of any contested case by stipulation, agreed settlement, consent order, or default."
[4] Under S.D. Admin. R. § 61:18:01:03, "Failure by a person to request a hearing within the time specified in § 61:18:01:02.02 or SDCL [§] 32-23-11 constitutes a waiver of the right to a hearing, and the department may then suspend, revoke, disqualify, or cancel the person's license."

4

recounting that after 11:00 a.m. CDT, Bass called to ask where everyone in the hearing was, and in response, she informed Bass he had missed the hearing, which had started at 10:00 a.m. CDT/ 9:00 a.m. MT. Doc. 134-4. According to McClelland, Bass "was pretty upset, said it IS 9:00 a.m. MT where he is calling from (Arizona)." Id. McClelland explained that the hearing examiner and opposing party had waited for Bass to connect, and "when he did not, he was considered a 'no show' and the hearing ended." Id. McClelland informed Bass that Arizona's time zone was currently two hours behind Pierre, South Dakota, the location of the hearing.[5] Id. Bass responded that he was not aware of the time difference and still wanted to have the hearing as he had "valid points to share with the judge." Id. McClelland also noted that Bass said he had called the DPS attorney, Hruska, that morning "so DPS was well aware that he wanted to participate." Id. McClelland informed Bass that he could ask the judge to reopen the case and explain his failure to call in. Id. In his Response to Defendants' Statement of Undisputed Facts, Bass disputes that he called in late at all, but he did not claim that he called into the hearing at the correct time in his own Statement of Undisputed Facts and did not submit evidence to refute that he called late due to his confusion over Arizona and South Dakota's time zones. Doc. 141 at 5; see also Doc. 137.[6]

---

[5] This Court takes judicial notice of the fact that Arizona does not follow daylight savings, and that daylight savings time in 2021 started on March 14 and ended on November 7. See Fed. R. Evid. 201; Doyle Rice, Daylight saving time is back this weekend, and so is the annual controversy about the practice, USA Today (Mar. 12, 2021, 12:26 p.m.), https://www.usatoday.com/story/news/nation/2021/03/09/daylight-saving-time-2021-what-to-know-debate/4593968001; Daylight Saving Time 2021, NJ.com (last updated Nov. 7, 2021, 6:52 a.m.), https://www.nj.com/news/2021/11/daylight-saving-time-2021-when-does-dst-end-clocks-fall-back-daylight-savings-time-explained.html. During this period, which included the date of the scheduling hearing, Pierre, South Dakota (a city in CDT) was two hours ahead of Arizona as Arizona does not follow daylight savings.

[6] In his Response, Bass asserts that he "was told during the first call that the Hearing would be in an hour from the time he called." Doc. 141 at 5. Bass asserts that he called back "56 minutes later and he was told the Hearing had already taken place." Id. This assertion is inconsistent with

5

It is undisputed that on November 2, 2021, the same day as the scheduled hearing, Bass wrote a letter to the Hearing Examiners Office asking to reopen the case, which Defendants included as an exhibit in support of their Motion for Summary Judgment. Doc. 134-5. In this letter, Bass wrote, "I did call in at 9 a.m. MST and was told that the hearing had already taken place." Doc. 134-5. Bass then went on to list in the letter numerous arguments against the suspension of his CDL, including but not limited to that his sentence in his South Dakota state criminal case was crafted with the intent that he be permitted to continue to drive for a living, that his attorney told him his license would not be affected by the conviction, and that there was no factual basis to support the allegation that he committed the offense while operating a motor vehicle. Id. On November 5, Hearing Examiner Darling denied Bass's request to reopen his hearing because Bass's excuse that he misunderstood the time of the hearing was not good cause to reopen the hearing when the correct time was listed on the Notice of Hearing. Doc. 134-6. This decision also noted that Bass had failed to appear at the hearing on November 2, and the matter had been dismissed on November 4. Id. The final decision disqualifying Bass's CDL was issued and entered on November 8, 2021, and it adopted the Hearing Examiner's Order of Dismissal dated November 4, 2021 in full[7] and ordered Bass's South Dakota commercial driving privilege to be disqualified for a year. Doc. 134-7.

---

Bass's letter written on the day of the hearing which references a single call during which he was told the hearing had already occurred. Doc. 134-5.

[7] Neither party submitted a copy of the Hearing Examiner's Order of Dismissal dated November 4, 2021, and therefore, the exact reasoning behind the Hearing Examiner's decision to disqualify Bass's South Dakota commercial driving privilege, or whether it was just an entry of default, is not in the record. However, as explained below, this is not a material fact in dispute preventing the granting of summary judgment. See Sartin v. Comm'r of Pub. Safety of State of Minn., 535 F.2d 430, 432 (8th Cir. 1976) (finding the plaintiff had waived his procedural due process claim where he had not appeared for the scheduled hearing and the revocation of his license was sustained by an order of default).

Bass's one-year disqualification of his CDL in South Dakota was effective on November 28, 2021. Doc. 131 ¶ 9; Doc. 132-1. Bass, however, disputes Defendants' assertion that his CDL was disqualified in the State of South Dakota *starting* on November 28, 2021. Doc. 131 ¶ 9; Doc. 141 at 4. In a printout submitted by DPS in support of Defendants' Statement of Undisputed Facts, CDLIS paperwork appears to indicate that South Dakota may have disqualified Bass's license on September 10, 2021, while the scheduled hearing was pending. See Doc. 132-1 (noting both that South Dakota disqualification was effective on September 10 and on November 28). There is nothing in the record to suggest Bass, as the Notice of Hearing advised he could do, appealed the final decision to disqualify his CDL to the circuit court, or subsequently, the Supreme Court of South Dakota. See Doc. 134-3.

## II. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). There is a genuine issue of material fact if "(1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." Morrow v. United States, 47 F.4th 700, 704 (8th Cir. 2022) (citation omitted). A party opposing a properly made and supported motion for summary judgment must cite particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to

withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). When there are cross motions for summary judgment, each party's motion must be evaluated independently in accordance with the standard weight of evidence accorded to the nonmoving party to determine whether there is any genuine issue of material fact. See Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983); Fed. Ins. v. Great Am. Ins., 893 F.3d 1098, 1102 (8th Cir. 2018); Rodriguez v. VanIperen, 736 F. Supp. 3d 699, 711 (D.S.D. 2024).

### III. Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment on two grounds: (1) that they provided Bass with proper pre-deprivation procedural due process when suspending his CDL, but Bass failed to attend his hearing on the suspension, or alternatively, (2) that they are entitled to qualified immunity. Doc. 130. In response, Bass argues (1) that he was not given the requisite pre-deprivation procedural due process, and (2) that the right to pre-deprivation procedural due process before a license suspension is clearly established, so Defendants are not entitled to qualified immunity. Doc. 140. Because Bass waived his procedural due process claim by failing to appear at his scheduled hearing, Defendants did not violate his clearly established constitutional rights, and therefore, Defendants are entitled to qualified immunity.

#### A. Qualified Immunity Standard

This Court first considers Defendants' invocation of qualified immunity. Defendants argue that there has been no violation of Bass's procedural due process rights, and even if there was a violation of Bass's constitutional right to procedural due process, the right was not clearly established based on existing case law. Doc. 130 at 11. "Qualified immunity shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" New v. Denver, 787 F.3d 895, 899 (8th

8

Cir. 2015) (quoting Harlow v. Fitzgerald. 457 U.S. 800, 818 (1982)). Qualified immunity "should be decided by the court long before trial" and "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." New, 787 F.3d at 899 (citation omitted). This protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

To determine whether a government official is entitled to qualified immunity, courts must decide (1) "whether the facts that a plaintiff has shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Est. of Nash v. Folsom, 92 F.4th 746, 754 (8th Cir. 2024) (cleaned up and citation omitted). "If either question is answered in the negative, the public official is entitled to qualified immunity." Vaughn v. Ruoff, 253 F.3d 1124, 1128 (8th Cir. 2001). "If both questions are answered in the affirmative, a public official can avoid a denial of qualified immunity only if she meets her burden of establishing undisputed and material predicate facts which demonstrate that her actions were reasonable under the circumstances." Id. A court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

**B. Absence of violation of a clearly established constitutional right.**

The record reflects that Defendants did not violate Bass's constitutional right to procedural due process. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

9

To demonstrate that his procedural due process rights have been violated, Bass must prove that (1) he had a protected liberty or property interest at stake and (2) the Defendants deprived him of that interest without due process of law. Hopkins v. Saunders, 199 F.3d 968, 975 (8th Cir. 1999); Keating v. Neb. Pub. Power Dist., 562 F.3d 923, 928 (8th Cir. 2009) ("In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of 'an opportunity . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case.'" (quoting Boddie v. Connecticut, 401 U.S. 371, 378 (1971))). "Due process is a flexible concept [] and calls only for such procedural protection as the particular situation demands." Moore v. Warwick Pub. Sch. Dist. No. 29, 794 F.2d 322, 327 (8th Cir. 1986). However, "[p]rocess is not an end in itself" as "[i]ts constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Skeets v. Johnson, 816 F.2d 1213, 1216 (8th Cir. 1987) (quoting Olim v. Wakinekona, 401 U.S. 238, 250 (1983)).

Bass has shown that he has a protected interest at stake because it is clearly established that a person has a protected interest in an issued license. Bell v. Burson, 402 U.S. 535, 539 (1971). Because "[s]uspension of issued licenses [] involves state action that adjudicates important interests of licensees," "licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." Id. This Court has already found that Bass possessed a protected interest in his CDL and that he was entitled to procedural due process to deprive him of that interest, namely notice and an opportunity to be heard. Doc. 24 at 4.

Whether or not a state is required to provide a hearing before or after a license revocation depends in part on why the state is revoking the license. See Mathews, 424 U.S. at 333, 340–49 (discussing factors to be considered when determining whether the state was required to hold a

pre-deprivation or post-deprivation hearing concerning the protected interest); Dixon v. Love, 431 U.S. 105, 114 (1977); Bell, 402 U.S. at 540. Defendants essentially assert through their statement of facts that they gave Bass an opportunity for a pre-deprivation hearing. See Doc. 131 ¶ 8. After Defendants gave Bass notice that they were withdrawing his license, he requested a hearing on the issue, and they ostensibly negated the withdrawal of his license pending the outcome of the scheduled hearing. See id. Bass contests that Defendants provided him with a pre-deprivation hearing and argues that (1) he was entitled to a pre-deprivation hearing under Bell, and (2) Defendants did not negate the withdrawal of his license before the hearing, so the hearing was in effect a post-deprivation hearing. See Doc. 140 at 3–4, 6, 13. The failure to negate the withdrawal would be at most a negligent act on the part of an individual DPS employee, and there is nothing in the record to suggest otherwise. Such a negligent act does not support a pre-deprivation procedural due process claim. See Zinermon v. Burch, 494 U.S. 113, 129–31, 138 (1990).

Unauthorized and random or negligent conduct by a state official does not give rise to a pre-deprivation procedural due process claim as a state cannot foresee such a deprivation and provide a process to prevent that deprivation. See id.; Parratt v. Taylor, 451 U.S. 527, 540–41 (1981) (holding that a state post-deprivation remedy satisfies procedural due process when the tortious deprivation of protected interests results from "a random and unauthorized act by a state employee"), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330–31 (1986). In Defendant Absher's affidavit, she attests that "if someone files a request for [an] administrative hearing[,] the DPS sends a negation of the withdrawal through CDLIS until after a hearing is held and a final determination as to the status of a withdrawal is finalized." Doc. 132 ¶ 13. Absher further attests, "This same process was followed in this case." Id. Bass does not dispute that DPS's standard policy is to negate the withdrawal when a hearing is requested nor argue that DPS

11

routinely fails to negate withdrawals when a hearing is requested. Instead, Bass argues only that his specific withdrawal was not actually negated. Doc. 141 at 3. However, taking the facts in the light most favorable to Bass, including the notation under "error description" on CDLIS paperwork that states "withdrawal not negated," and inferring that withdrawal was not negated, the most this record could support would be an inference of negligent conduct on the part of a DPS employee in charge of negating the withdrawal, which does not give rise to a procedural due process claim. See Zinermon, 494 U.S. at 129–31, 138.

Even if the hearing were a post-deprivation hearing following DPS's withdrawal of Bass's license, Bass's procedural due process rights would not have been violated because a state may temporarily withdraw an individual's license before a hearing after multiple traffic-related convictions because of the state's interest in safety. Dixon, 431 U.S. at 114–15. Because of South Dakota's interest in safety, DPS would have been allowed to withdraw Bass's license temporarily pending the hearing following his motor vehicle related conviction for Ingestion. In Bell, which Bass relies on for his argument for a pre-deprivation hearing, the Supreme Court required the state to hold a hearing before suspending a license for a motorist under a state statute "where the 'only purpose' of the [] statute . . . was 'to obtain security from which to pay any judgments against the licensee resulting from the accident.'" Dixon, 431 U.S. at 114 (quoting Bell, 402 U.S. at 540). However, when considering a different statute allowing for the suspension and revocation of licenses after a licensee had repeatedly violated the law, the Supreme Court upheld the constitutionality of a state's discretionary suspension or revocation of any driver's license before a hearing where the statute provided for notice and opportunity to request a hearing to challenge the decision; the Supreme Court reasoned that a driver "eventually can obtain all the safeguards procedural due process could be thought to require before a discretionary suspension or revocation

becomes final." Id. at 108–09, 112. This decision rested in part on the Court's determination that "a statute that, among other things, is 'designed to keep off the roads those drivers who are unable or unwilling to respect traffic rules and the safety of others' comports with due process because the state has an 'important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard.'" Booker v. City of Saint Paul, 762 F.3d 730, 736 (8th Cir. 2014) (quoting Dixon, 431 U.S. at 114–15).

Defendants submit that they negated their withdrawal of Bass's license following his request for a hearing as is their standard procedure, and therefore, his hearing was a pre-deprivation opportunity to be heard rather than one akin to the hearing following a temporary suspension or revocation upheld as constitutional in Dixon. Doc. 130 at 7; Doc. 131 ¶ 8; Doc. 132 ¶ 13; Doc. 132-1. Even accepting that Bass's license was actually withdrawn before his scheduled hearing, Bass's argument for violation of due process still fails. If the hearing at issue in this case followed the temporary withdrawal of his license, it would still be constitutional because South Dakota has an important public safety interest in at least temporarily suspending or revoking the CDL following Bass's felony ingestion arrest in his vehicle and subsequent conviction. After all, that conviction was at least facially related to a traffic violation, and Bass was allowed the ability to "eventually [] obtain all the safeguards procedural due process could be thought to require before a discretionary suspension or revocation becomes final." See Doc. 140 at 2–3; Dixon, 431 U.S. at 112.[8]

---

[8] Bass argues that Defendants are also liable for violations of his procedural due process rights based on Arizona's proceedings withdrawing his CDL in Arizona because South Dakota state officials notified Arizona of Bass's felony conviction through the CDLIS and Arizona based the withdrawal of Bass's CDL on his South Dakota state felony conviction. See Doc. 140 at 3. Defendants were required to notify Arizona state officials of Bass's conviction and their subsequent withdrawal of his CDL in South Dakota by federal law. Doc. 130 at 6 (quoting 49 C.F.R. § 383.31(a); 49 C.F.R. § 384.208). Defendants' pre-hearing notification informing Arizona

A litigant must generally exhaust available state remedies before bringing a deprivation of procedural due process claim under § 1983, although, as Bass highlights, "it is not necessary for a litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation* process." Keating, 562 F.3d at 928–29 (citations omitted). But even a plaintiff, like Bass, claiming that he was entitled to a pre-deprivation process, must still pursue those pre-deprivation administrative remedies: in cases concerning protected interests in both pre-deprivation and post-deprivation contexts, the Eighth Circuit has affirmed dismissals for waiver of claims where plaintiffs ignored or abandoned their administrative remedies before pursuing their procedural due process claims. See Hroch v. City of Omaha, 4 F.3d 693, 695–96 (8th Cir. 1993) (affirming district court's grant of summary judgment on pre-deprivation procedural due process claim where plaintiff waived his procedural due process objection to defendant's condemnation notices by failing to take advantage of the pre-deprivation remedies, including not attending the hearing on the condemnation order or appealing the condemnation order); Krentz v. Robinson, 228 F.3d 897, 904 (8th Cir. 2000) (reviewing cases where plaintiffs had waived "a procedural due process claim by refusing to participate in post-termination administrative or grievance procedures made available by the state" and noting the plaintiff "could have sought a contested case hearing under the [state statute], but he did not"); Groenewold v. Kelley, 888 F.3d 365, 373 (8th Cir. 2018) (affirming district court's conclusion that plaintiff had

---

of Bass's felony conviction in CDLIS and subsequent withdrawal of his CDL in South Dakota did not automatically deprive Bass of his CDL in Arizona, but even if Defendants' notification in CDLIS were considered a temporary deprivation before a final hearing on the nature of Bass's felony, it would not have violated Bass's procedural due process rights. See Dixon, 431 U.S. at 108–09, 112. Further, Arizona and South Dakota separately initiated proceedings to withdraw Bass's CDL in their respective states, and any cause of action that Bass may have for a procedural due process claim concerning Arizona's withdrawal of his license is not properly brought against these Defendants, who are South Dakota state officials without the ability to revoke or restore his CDL in Arizona. See Doc. 132 ¶ 5.

waived his post-termination procedural due process rights when he voluntarily dropped his appeal). In other words, "[a] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." Riggins v. Bd. of Regents of Univ. of Neb., 790 F.2d 707, 711 (8th Cir. 1986). Neither party disputes that Bass received proper notice of the withdrawal of his license, that Bass requested a hearing to challenge that withdrawal, and that Bass received notice of that scheduled hearing. See Doc. 130 at 7; Doc. 141 ¶¶ 7, 10. Therefore, the remaining question is whether Bass's procedural due process rights were violated regarding his opportunity to be heard. However, because Bass failed through his own mistake to show up for his hearing, Bass has waived his procedural due process claim.

The Eighth Circuit in Sartin previously upheld a dismissal of a procedural due process claim because the plaintiff had waived his claim to challenge the revocation of his license following an arrest for a DUI where (1) the state had notified him of the revocation; (2) the state had informed him that he could request a hearing within twenty days to contest the revocation; (3) he requested the hearing; (4) both the plaintiff and his attorney failed to appear at the set time and place for the hearing; and (5) the revocation was sustained by an order of default. Sartin v. Comm'r of Pub. Safety of State of Minn., 535 F.2d 430, 432 (8th Cir. 1976). The plaintiff failed to pay the necessary filing fee and therefore, his appeal of the order entered by default was not perfected. Id. The Eighth Circuit affirmed the dismissal of the plaintiff's procedural due process claim even though "[p]rior to the revocation, [the plaintiff] was tried and acquitted by a jury" on the DUI charge. Id. In finding that the plaintiff had waived his procedural due process claim, the Eighth Circuit noted that the plaintiff had been "provided notice and an opportunity to challenge the revocation of his driver's license" and it

15

> doubt[ed] that it is the intention of the Civil Rights Act to allow a person knowledgeable of the procedures of the law to ignore his chance to have an error corrected and then attack the administrators of justice who were denied the opportunity to correct the error in an action for damages.

Id. (quoting Rhodes v. Meyer, 334 F.2d 709, 714 (8th Cir.), cert. denied, 379 U.S. 915 (1964)).

It is not subject to genuine dispute that Bass had a hearing scheduled on November 2, 2021, that Bass received notice of that hearing, that the DPS attorney and the Hearing Examiner waited fifteen minutes to start the hearing, and that Bass did not call in for the hearing due to his own mistake in understanding time zones. Although Bass contests in his response that he called into the hearing late, see Doc. 141 ¶ 13, Bass has set forth no "particular materials in the record supporting the assertion that [this] fact is genuinely disputed," Fed. R. Civ. P. 56(c)(1); Gacek, 666 F.3d at 1145. See also Morrow, 47 F.4th at 704. In contrast, Defendants have submitted a memo by McClellan documenting her conversation with Bass and a letter from Bass, both of which are dated the same day as the hearing. See Docs. 134-4, 134-5. Both McClellan's memo and Bass's letter reflect the same basic fact that Bass called in late because he was confused about the time zones. See Docs. 134-4 ("I told him that AZ's MT is currently two hours behind us. He said he wasn't aware of the time difference."); Doc. 134-5 ("I did call in at 9 am MST and was told that the hearing had already taken place. However, I am not familiar with the time zone for SD. I thought I was on time if I called at 9 am MST."). Because "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment," the material fact not subject to genuine dispute is that Bass did call after the hearing's scheduled time, when it had already concluded. Thomas, 483 F.3d at 527.

Bass's unilateral mistake on the time of the hearing cannot be attributed to Defendants, who clearly marked the time and date of the hearing, including the time in two different time zones,

16

CDT and MST, for Bass on his Notice of Hearing. Doc. 134-3. Bass's failure to appear at the hearing is the functional equivalent of the actions of plaintiffs in cases such as Hroch and Sartin, neither of whom attended their scheduled hearings concerning their protected interests before bringing procedural due process claims in a § 1983 action. 4 F.3d at 695–96 (concluding the claim was waived); 535 F.2d at 432 (same). Therefore, Bass waived his procedural due process claim, and Defendants were not required to provide him with any additional hearings to determine whether his conviction qualified as a violation of using a commercial or noncommercial motor vehicle in the commission of any felony before finalizing the withdrawal of his license under SDCL § 32-12A-36(A). The evidence viewed in the light most favorable to Bass does not support a violation of a clearly established constitutional right, and therefore, Defendants are entitled to summary judgment on the basis of qualified immunity with respect to Bass's claim in Count I that he was denied procedural due process before the final withdrawal of his license. Vaughn, 253 F.3d at 1128; Dollar Loan Ctr. of S.D., LLC v. Afdahl, 933 F.3d 1019, 1026 (8th Cir. 2019).

### IV. Plaintiff's Motion for Summary Judgment

On Bass's motion for summary judgment, this Court must construe all facts and make reasonable inferences in the light most favorable to the Defendants as the non-moving party. Bass moves for summary judgment on Count I with respect to Defendants Schrank and Absher. Doc. 136 at 4. Bass argues that he was denied adequate procedural due process before the withdrawal of his CDL, and that Defendants Schrank and Absher are not entitled to sovereign immunity, qualified immunity, or the affirmative defense that he failed to appear at the scheduled hearing. Id. at 4–9. However, as discussed above, Bass has waived his procedural due process claim and Defendants Schrank and Absher are therefore entitled to qualified immunity. Bass is not entitled to summary judgment on Count I with respect to Defendants Schrank and Absher.

### V. Count II of the Second Amended Complaint

Count II against Defendants Shelby Hattum and John Doe concerns the reasonableness of the search that led to Bass's underlying arrest and conviction for Ingestion. See Docs. 129; Doc. 130 at 1; Doc. 136. Bass alleged this search was unreasonable because troopers purposefully damaged his property. Doc. 122 at 8. This Court previously denied Defendant Hattum's Motion to Dismiss, Doc. 21. Doc. 49. In that Order, considering only the factual allegations in the Amended Complaint, this Court found that Bass had pleaded a viable claim in which he alleged a violation of his Fourth Amendment right to be free from unreasonable searches. See id. at 5 (citing United States v. Alverez, 235 F.3d 1086, 1088 (8th Cir. 2000); United States v. Santana-Aguirre, 537 F.3d 929, 932 (8th Cir. 2008); United States v. Ramirez, 523 U.S. 65, 71 (1998)). This Court further noted that "[w]hether Bass will be able to come forward with evidence to prove when the damage occurred or who caused it remains to be seen," but it was not necessary for Bass to do so at the motion to dismiss stage. Id. at 6. This Court also indicated that "[i]f Hattum plans to contend that the damages Bass alleges were reasonable given the circumstances, then she needs to provide the Court with evidence to substantiate her position rather than asking the Court to speculate what the parties may or may not be able to prove later in the proceedings." Id. at 7. Finally, this Court concluded that if Bass is able to prove compensatory damages in the amount he seeks, $5,000, his damages are not "de minimis." Id. As neither Bass nor Hattum have provided this Court with any arguments or evidence supporting or refuting Bass's allegations at the summary judgment stage, Bass's Fourth Amendment claim against Hattum survives at this point.

However, in the years since initially filing his Complaint, Bass has been unable to identify Trooper John Doe. "It is generally impermissible to name fictitious parties as defendants in federal court, but 'an action may proceed against a party whose name is unknown if the complaint makes

allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'" Perez v. Does 1-10, 931 F.3d 641, 646 (8th Cir. 2019) (quoting Est. of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)). But "[e]ven under this limited exception to the general prohibition against naming fictious parties as defendants, Plaintiffs must still comply with the Federal Rules of Civil Procedure." Nat'l Legal & Pol'y Ctr. v. Berkshire Hathaway Inc., 774 F. Supp. 3d 1105, 1125 (D. Neb. 2024) (cleaned up and citation omitted). Federal Rule of Civil Procedure 4(m) requires that a plaintiff effect service on both named and unnamed defendants within 90 says after filing their complaint. Fed. R. Civ. P. 4(m). Although Bass filed his initial Complaint on July 12, 2023, he has yet to provide a service of summons and complaint on the Doe Defendant. Bass has also failed to file a motion for an extension of time to permit discovery of the Doe Defendants' identities. Accordingly, this Court gives Bass notice pursuant to Rule 4(m) that unless Bass files a motion for an extension of time for leave to identify and serve the Doe Defendant demonstrating good cause, Bass's Fourth Amendment claim in Count II against the Doe Defendant will be dismissed without prejudice fourteen days from the date of this Order. Bass's claim in Count II against Trooper Hattum appears to be ripe for setting of a trial date.

## VI.   Conclusion

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion for Summary Judgment, Doc. 129, is granted. It is further

ORDERED that Plaintiff's Motion for Summary Judgment, Doc. 136, is denied. It is finally

ORDERED that Count I of the Complaint is dismissed with prejudice as are Defendants Jenna Howell, Jane Schrank, Amanda Hossle, and Rhyenn Absher.

DATED this 23rd day of February, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE